UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHANNEL CLARITY, INC.; CHANNEL CLARITY HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> OPTIMA TAX RELIEF, LLC, <br><br> Defendant. | No. 14 C 8945 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Channel Clarity seeks a declaratory judgment that certain content on its website does not infringe Optima's trade dress rights and copyrights. *See* R. 1. Optima has moved to dismiss the complaint arguing that it is an impermissible anticipatory filing. R. 8. For the following reasons, Optima's motion is granted.

**Background**

On October 8, 2014, Jihee Kim, Optima's in-house counsel, called Channel Clarity's CEO to inform him that Optima believed Channel Clarity's website was infringing Optima's trade dress rights and copyrights. R. 18-3 ¶ 2. Over the next several days representatives of Optima and Channel Clarity communicated regarding the dispute. *Id.* ¶¶ 3-4. On October 24, 2014, Ms. Kim sent a formal cease and desist letter to Stanley Sneeringer, Channel Clarity's counsel, stating that Optima considered Channel Clarity's website to constitute "willful infringement of its exclusive trade dress rights," and "demand[ed] that Channel Clarity

immediately and materially change its website design as outlined [in the letter] or risk further legal action." R. 11-2 at 1. The letter also noted that the "[r]emedies for trademark infringement and unfair competition include money damages, costs, the defendants' profits, and injunctive relief. . . . [and] [i]f the infringement is willful, the plaintiff may also recover treble damages and attorneys['] fees." *Id.* at 2. The letter threatened that if Channel Clarity did not modify its website as Optima specified, Optima would "pursue legal action." *Id.*

The October 24 letter also included an October 31 deadline for Channel Clarity to respond. *Id.* Mr. Sneeringer contacted Ms. Kim on October 30, and the parties agreed to extend the deadline for a written response to November 10, and also scheduled a phone call for November 7. R. 18-3 ¶¶ 6-7. On the November 7 call, Mr. Sneeringer told Ms. Kim that Channel Clarity would not agree to implement any of Optima's proposals for changes to Channel Clarity's website described in the October 24 cease and desist letter. *See id.* ¶ 8. According to Mr. Sneeringer, Ms. Kim responded that Channel Clarity's decision not to comply "did not leave her with many options," and requested that Channel Clarity's response be put in writing. *Id.* ¶ 10. Ms. Kim emailed Mr. Sneeringer on November 10 inquiring about the status of the written response. *Id.* ¶ 12. Mr. Sneeringer delivered a written response to Ms. Kim on November 20, 2014, acknowledging Optima's "allegations of infringement," and stating that "[s]hould Optima assert its frivolous claims in a legal proceeding, Channel Clarity will vigorously defend those claims and seek its fees," but "[a]bsent

further ill-advised action on Optima's part, Channel Clarity . . . consider[ed] the matter closed." R. 18-6 at 2.

In fact, however, Channel Clarity had already filed this action 13 days earlier on November 7—the same day Mr. Sneeringer and Ms. Kim spoke on the phone. Never in that communication, nor any subsequent communication leading up to November 20, did Mr. Sneeringer inform Ms. Kim, or any other representative of Optima, that Channel Clarity had filed this lawsuit. Optima states in its brief that it "independently learned of this action around the time of Mr. Sneeringer's November 20 letter." R. 10 at 5.

On December 2, 2014, Optima filed a lawsuit in the Central District of California asserting its infringement claims, and served it on December 4. *See* R. 11-5 (*Optima Tax Relief, LLC v. Channel Clarity, Inc.*, No. 8:14-cv-01902, (C.D. Cal.)); R. 11 ¶ 17. Optima's "coercive action" in California is the "mirror image" of Channel Clarity's declaratory action,[1] in that it claims that Channel Clarity's website infringes its trade dress rights and copyrights, whereas Channel Clarity seeks a declaration that it does not infringe Optima's rights.[2] On December 18—

---

[1] Courts addressing motions to dismiss declaratory judgment actions as impermissibly anticipatory often refer to a lawsuit filed by the defendant in the declaratory judgment action alleging the "mirror image" of the declaratory action as a "coercive action." *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010).

[2] Optima's action in California also alleges violations of California law, but these additional claims do not alter the Court's analysis on this motion because Optima's infringement claims fully mirror Channel Clarity's claim for declaratory relief. Notably, the court in California has already denied Channel Clarity's motion to dismiss that action, in which Channel Clarity argued that its declaratory judgment

3

sixteen days after Optima filed its coercive action—Channel Clarity served process in this declaratory action. *See* R. 12.

At oral argument on this motion on February 11, 2015, the Court asked Mr. Sneeringer why he failed to tell Ms. Kim that Channel Clarity had filed a complaint against Optima. Mr. Sneeringer replied that he did not immediately inform Ms. Kim of the lawsuit because of other professional matters and the need to finalize his retainer arrangement with Channel Clarity. He also stated that he was unsure whether he had authority from his client to inform Optima of the filing.

Optima argues that Channel Clarity's complaint should be dismissed because it is an "improper anticipatory suit" motivated to secure a favorable forum. R. 10 at 9. Channel Clarity argues, to the contrary, that the filing was not motivated by a desire to secure a favorable forum, but to "avoid a potential accrual of damages." R. 18 at 6.

**Governing Law and Legal Standard**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, [with certain exceptions not relevant here,] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The purposes of declaratory judgments are to clarify and settle the legal relations at issue and to terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco*

---

action in this Court was filed first. *See Optima Tax Relief, LLC v. Channel Clarity, Inc.*, No. 8:14-cv-01902, R. 18 (C.D. Cal. Feb. 11, 2015).

4

*Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). Once a party's "right to a coercive remedy . . . has accrued. . . . a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id*. However, the "wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *Id*. at 751.

In such instances where a party seeks a declaratory judgment for purposes other than that for which declaratory actions are intended, "[i]t is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Id*. at 747. The Seventh Circuit has noted, in particular, that a declaratory judgment action should be dismissed when a "mirror-image action seeking coercive relief" has been filed by the defendant in the declaratory judgment action, "regardless of which case was filed first." *Research Automation*, 626 F.3d at 980. In such circumstances, the Seventh Circuit "ordinarily give[s] priority to the coercive action." *Id*.; *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) ("[B]ecause the issuance of a declaratory judgment is discretionary, a suit for declaratory judgment aimed solely at wrestling the choice of forum from the 'natural' plaintiff will normally be dismissed and the case will be allowed to proceed in the usual way." (citing *Tempco*, 819 F.2d at 747)).

Although it is "well settled" that courts may dismiss declaratory judgment actions in their discretion, neither the Declaratory Judgment Act nor Seventh Circuit precedent explain what standard the Court should follow in addressing such a motion. The parties in this case have not addressed the issue either. However, a motion seeking dismissal of a declaratory judgment action almost certainly implicates a separate coercive action filed in a different venue, and requires the court to choose one venue over another, similar to a motion to dismiss for improper venue. *See Research Automation*, 626 F.3d at 980. This close relation to motions to dismiss for improper venue counsels in favor of applying the standard relevant to such motions under Federal Rule of Civil Procedure 12(b)(3). For this reason, in deciding this motion, the Court will apply the Seventh Circuit's standard for Rule 12(b)(3) and construe "reasonable inferences from the facts . . . in the plaintiffs' favor." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). Additionally, "[w]hen ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings [or to] to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011). Thus, the Court will consider the declarations, emails, and letters submitted with the parties' briefs even though these documents were not attached to the complaint.

## Analysis

This case is very similar to *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, in which the Seventh Circuit affirmed dismissal of a declaratory judgment action.

819 F.2d at 749. Like this case, *Tempco* involved allegations of trademark infringement, and there was no question that the declaratory judgment action and the coercive action were mirror images. And just as in this case, in *Tempco*, the defendant Omega sent a cease and desist letter to the plaintiff Tempco. Nine days later, Tempco communicated that they would not comply with the demand. Five days after that, Omega sent a letter to Tempco stating that Tempco's refusal to comply left Omega no alternative but to file an action. Tempco filed a declaratory judgment action the day it received the letter. Omega filed its coercive action four days after that. The district court dismissed Tempco's declaratory judgment action as an impermissible anticipatory action. *Id.*

In affirming the district court's decision, the Seventh Circuit noted that Omega had "promptly filed suit to enforce its claim that [Tempco] had infringed its trademark," and had not engaged in delay by "continually accusing" Tempco without taking action. *Id.* In the absence of such dilatory tactics, the court held that "a declaratory judgment would serve no useful purpose" since Omega had "promptly filed suit to enforce its claim." *Id.*

Here, Optima sent a cease and desist letter on October 24, which clearly conveyed its intent to file a lawsuit if Channel Clarity did not comply with Optima's demands and included a deadline for a response. The letter enumerated the forms of relief available to Optima and specifically stated that Optima would "pursue legal action." On November 7, Channel Clarity's counsel advised Optima's counsel during a phone call that Channel Clarity would not accede to Optima's demands. According

7

to Channel Clarity's counsel, Optima's counsel responded that Channel Clarity's decision not to comply "did not leave her with many options," and requested that Channel Clarity's response be put in writing. Despite this request, Channel Clarity filed its declaratory judgment action that day and did not provide the promised written response until November 20. Optima filed its coercive action twelve days later.

There is nothing about this course of events indicating that Optima was delaying in filing an action against Channel Clarity. The parties engaged in a course of negotiations culminating in Optima's cease and desist letter. Optima was then waiting in good faith for Channel Clarity to provide the final step in those negotiations by submitting a formal response to the cease and desist letter in writing. Optima's counsel reiterated the threat of litigation contained in the cease and desist letter by stating that Channel Clarity's refusal to comply with Optima's demands left Optima with few options. Optima filed its action twelve days after receiving the written response Optima had requested from Channel Clarity. Although it might have been possible for Optima to file more quickly, considering the deliberate pace of the negotiations to that point, including Channel Clarity's decision to wait almost a month before formally responding to Optima's cease and desist letter, Channel Clarity had no reason to think that Optima was sleeping on its rights or sought to harm Channel Clarity by intentionally engaging in delay and "continually accusing" Channel Clarity without taking action. Rather, Optima promptly filed its action twelve days after its negotiations with Channel Clarity had

fully concluded. Other courts in this district have followed *Tempco's* precedent in similar circumstances. *See Weber-Stephen Prods. Co. v. Gardena Norge A/S*, 2004 WL 422651, at *2 (N.D. Ill. Feb. 12, 2004) (coercive action filed six days after declaratory judgment action); *Wilson Sporting Goods Co. v. Nicklaus Golf Equip. Co.*, 2004 WL 783069, at *2 (N.D. Ill. Jan. 8, 2004) (45 days); *M Credit, Inc. v. Cadlerock, L.L.C.*, 2003 WL 21800017, at *5 (N.D. Ill. July 31, 2003) (28 days); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 943 (N.D. Ill. 2002) (20 days); *Eli's Chi. Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. Oct. 21, 1998) (six days); *Successories, Inc. v. Arnold Palmer Enters.*, 990 F. Supp. 1044, 1046 (N.D. Ill. 1998) (six days); *Associated Mills, Inc. v. Regina Co.*, 675 F. Supp. 446, 447 (N.D. Ill. 1987) (twelve days); *see also Amco Ins. Co. v. Richardson*, 2005 WL 4880627, at *1 (S.D. Ind. Sept. 1, 2005) (Tinder, J.) (three days).

Moreover, Channel Clarity's asserted justification for the timing of its filing rings hollow. Channel Clarity contends that it filed this action in order to "avoid a potential accrual of damages." R. 18 at 6. But if that were Channel Clarity's true goal, Channel Clarity should have told Optima about its filing in order to move the litigation towards its ultimate conclusion, cutting off damages. Channel Clarity's failure to serve its action, let alone inform Optima that it had been filed, indicates that Channel Clarity's motive was not truly defensive. Considering the circumstances, the Court finds that the only reasonable explanation for Channel Clarity's tactics was a desire to secure a more convenient forum. That is not a permissible basis for filing a declaratory judgment action.

9

Channel Clarity also argues that it was justified in filing this declaratory judgment action because it was not filed "in the face of clear threats of an imminent suit." R. 18 at 5. Channel Clarity cites *Serta, Inc. v. Oleg Cassini, Inc.*, in which the district court denied the defendant's motion to dismiss the declaratory judgment action because the defendant merely "threatened litigation but did not specify a forum, provide a deadline before it would file suit, or otherwise indicate that a lawsuit was imminent." 2012 WL 2503959, at *2 (N.D. Ill. June 28, 2012). In addition to mere "general threats of litigation," the defendant in *Serata* "made repeated demands of [the plaintiff] (and its customer)." *Id.* at *3. Channel Clarity argues that Optima's threats were similarly "general" and "repeated." R. 18 at 8. Contrary to Channel Clarity's contentions, however, Optima made only one demand, embodied in the October 24 cease and desist letter, and that letter was not general but specifically stated that Optima would "pursue legal action" and included a deadline by which Optima expected Channel Clarity to respond. Any delay in the process was occasioned by Channel Clarity's request for an extension of time to respond to the October 24 letter, its failure to provide a written response sooner than it did, and its failure to inform Channel Clarity of this lawsuit (let alone serve it) in a timely manner. Additionally, unlike the defendant's actions in *Serta*, Channel Clarity has not alleged or argued that Optima directly threatened any of Channel Clarity's customers or engaged in other aggressive tactics indicating that Optima desired to attempt to force a resolution to the dispute by means other than legal action. Channel Clarity's asserted justification for filing this declaratory

judgment action is not consistent with the facts. Because the complaint was an impermissible anticipatory action, it is dismissed.

## Conclusion

For the foregoing reasons, Optima's motion to dismiss, R. 8, is granted, and Channel Clarity's complaint is dismissed with prejudice.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: February 18, 2015